1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| MASIMO CORPORATION,<br><br>                       Plaintiff,<br><br>    v.<br><br>SOTERA WIRELESS; HON HAI<br>PRECISION INDUSTRY CO., LTD.,<br><br>                     Defendants. | Case No. 19-cv-01100-BAS-NLS<br><br>**ORDER GRANTING FOXCONN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**[ECF No. 17]** |

11
12
13
14
15
16
17
18
19
20
21
22
23

       Plaintiff Masimo Corporation ("Masimo") filed this patent infringement action on June 12, 2019 against Defendants Sotera Wireless, Inc. ("Sotera") and Hon Hai Precision Industry Co. Ltd. (referred to as "Foxconn").[1]  (Compl., ECF No. 1.)  Foxconn now brings a Motion to Dismiss Plaintiff's Complaint ("Motion") for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss, ECF No. 17.)  For the reasons stated below, the Court **GRANTS** Foxconn's Motion.

24
25
26
27
28

---

[1] Although not addressed by either party in their briefings, "Foxconn" appears to be the registered trade name of Hon Hai Precision Industry Co. Ltd. in the United States.  *See* Foxconn, Trademark Electronic Search System (TESS), United States Patent and Trademark Office, accessed at <http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4804:2wpvm3.3.6>; *see also* Hon Hai/Foxconn Technology Group Home Page, accessed at https://www.foxconn.com/.  Because Masimo refers to Defendant as "Foxconn" throughout its Complaint, the Court does the same in this Order for ease of understanding.

# I.     BACKGROUND

Masimo is a medical technology company responsible for developing numerous noninvasive patient monitoring technologies that measure various physiological indicators, such as blood oxygen levels and pulse rates.  (Compl. ¶¶ 10, 15.)  Masimo applied these "measurement technologies" to patient-worn monitors that allowed clinicians to continuously monitor patient physiology.  (*Id.* ¶¶ 11–12.)  Masimo's mobile monitors have wireless capabilities and display large amounts of real-time patient data "in a quickly comprehensible manner" for efficient and accurate clinical assessments that allow patients to be untethered from stationary monitors, reduce false alarms, and enable medical professionals to obtain data from patients who are unable to sit still.  (*Id.* ¶¶ 10– 13.)  Masimo claims that after it introduced many of these technologies to the market, "many competitors, much larger than Masimo, used Masimo's technology without a license . . . ." (*Id.* ¶ 15.)

Masimo claims that Defendants are such competitors.   Specifically, Masimo contends that Sotera's ViSi Mobile Monitoring System—a device that uses thumb and chest sensors to monitor patients' vital signs, including pulse oximetry, pulse rate, and respiration rate—infringes nine Masimo patents related to noninvasive patient monitoring.[2]  (*See* Compl. ¶¶ 16–25.)  As to Foxconn, Sotera's parent company, Masimo alleges the following claims, under provisions of the United States Patents Act,[3] for direct infringement, active inducement, and contributory infringement:

- Foxconn "controls Sotera and Sotera's management team."  (*Id.* ¶ 3.)

---

[2] U.S. Patent No. 9,788,735, entitled "Body Worn Mobile Medical Patient Monitor" ("the '735 patent"); U.S. Patent No. 9,795,300 entitled "Wearable Portable Patient Monitor" ("the '300 patent"); U.S. Patent No. 9,872,623 entitled "Arm Mountable Portable Patient Monitor" ("the '623 patent"); U.S. Reissue Patent No. RE47,218 entitled "Adaptive Alarm System" ("the RE218 patent"); U.S. Reissue Patent No. RE47,244 entitled "Alarm Suspend System" ("the RE244 patent"); U.S. Reissue Patent No. RE47,249 entitled "Alarm Suspend System" ("the RE249 patent"); U.S. Patent No. 10,213,108 entitled "Arm Mountable Portable Patient Monitor" ("the '108 patent"); U.S. Patent No. 10,255,994 entitled "Physiological Parameter Alarm Delay" ("the '994 patent"); U.S. Reissue Patent No. RE47353 entitled "Alarm Suspend System" ("the RE47353 patent").
[3] *See*  35 U.S.C. §§ 271(a)–(c).

- Foxconn directed Sotera's "manufacture, use, sale, offer for sale, and/or import into the United States" of the offending electronic patient monitoring systems, either directly infringing or inducing infringement on the patents. (*Id.* ¶¶ 26, 30, 42, 54, 66, 78, 90, 102, 114, 126.)

- Foxconn "announced plans to make Sotera's ViSi Mobile Monitoring components and products, including at least batteries and sensors for the products." (*Id.* ¶ 26.)

- Foxconn had knowledge of the patents because it "monitored Masimo's patents . . . by hiring former Masimo employees and after previous trade secret misappropriation litigation asserted against Sotera by Masimo[.]" (*Id.* ¶¶ 32, 44, 56, 68, 80, 92, 104, 116, 128.)

- Foxconn actively induces infringement of Masimo's patents "by marketing and selling the above ViSi Mobile Monitoring Systems," knowing that they would be used in an infringing manner. (*Id.* ¶¶ 33, 45, 57, 69, 81, 93, 105, 117, 129.)

- Foxconn actively induces direct infringement Masimo's patents by healthcare service providers and users by, for example, "providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of the ViSi Mobile Monitor" despite knowing that such use would infringe. (*Id.* ¶¶ 34, 46, 58, 70, 82, 94, 106, 118, 130.)

- Foxconn contributorily infringes because Sotera sells and/or imports components of the ViSi Mobile Monitoring System that "constitute material parts of the invention of the asserted claims of the . . . patent[s], are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Sotera and Foxconn to be especially made or especially adapted for use in an infringement of the . . . patent[s]." (*Id.* ¶¶ 35, 47, 59, 71, 83, 95, 107, 119, 131.)

Masimo seeks monetary relief against both Defendants and equitable relief against Sotera, Foxconn, and "officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them" for the alleged infringement of each of its nine patents. (*See* Compl., Prayer for Relief.)

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).[4] The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can

---

[4] "A motion to dismiss for failure to state a claim generally raises a 'purely procedural question not pertaining to patent law,' for which courts apply "the law of the regional circuit.'" *Labyrinth Optical Techs., LLC v. Fujitsu Am., Inc.*, No. SACV 13-0030 AGM (LGx), 2013 WL 12126111, at *1 (C.D. Cal. Aug. 21, 2013) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007).

prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

## III.   ANALYSIS

Foxconn moves to dismiss the Complaint on the basis that Masimo has not stated facts showing that Foxconn directly infringed, is vicariously liable for Sotera's direct infringement, actively induced infringement by third parties, or contributorily infringed by making, using, selling or importing components of the ViSi Mobile Monitoring System. (*See generally*, Mem. of P. & A. ("Mem."), ECF No. 17-1.) The Court first addresses evidentiary issues raised by Masimo's Opposition before turning to the merits of Foxconn's arguments on dismissal.

### A.   Evidentiary Issues

As a threshold issue, the Court must determine whether to consider materials outside the pleadings submitted by Masimo in support of its Opposition. Masimo includes as exhibits multiple articles, website printouts, and documents from Sotera's Chapter 11 bankruptcy action and Masimo's separate trade secrets case against Sotera—including communications from confidential settlement negotiations—to support its argument that Foxconn has sufficient control over and involvement in Sotera's operations to be held liable for infringement. (*See generally*, Opp'n to Mot. to Dismiss ("Opp'n"), ECF No. 33; *see also* Exs. A–B to Decl. of Joe Kiani, ECF No. 32-1 (filed under seal); Exs. C–O to Decl. of Brian C. Claassen, ECF No. 33-1.) While Masimo addresses

- 5 -

questions about admissibility of its exhibits under Federal Rule of Evidence 408, it does not address whether the exhibits can be properly considered at the 12(b)(6) stage.

"[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), '[r]eview is limited to the complaint.'" *Lee v. City of Los Angeles*, 250 F. 3d 668, 688 (9th Cir. 2001) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)). If a court considers documents extraneous to the pleadings on a 12(b)(6) motion, the court must treat motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

### 1.   Judicial Notice

Judicial notice permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). The Court may take judicial notice on its own. Fed. R. Evid. 201(c)(1).

While some documents, such as court filings from Sotera's Chapter 11 proceeding and the trade secret lawsuit, "are judicially noticeable for certain purposes, such as to demonstrate the existence of other court proceedings," the Court cannot take judicial notice of these documents if offered to demonstrate that Foxconn has sufficient control over Masimo to hold it vicariously liable for infringement. *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1054 (N.D. Cal. 2012), *aff'd*, 520 F. App'x 534 (9th Cir. 2013) (holding that court documents "are not judicially noticeable for [plaintiff's] purpose, which is to

demonstrate that his arguments and allegations against Defendants are true"). Whether Foxconn exerts enough control over Sotera to be held liable for infringement is a fact at the core of this Motion and cannot therefore be the subject of judicial notice. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) ("Nor may the court take judicial notice of any matter that is in dispute."), *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010) (citing *Lee*, 250 F.3d at 689–90).

## 2.   Incorporation by Reference

Under the doctrine of incorporation by reference, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations omitted); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[T]he incorporation-by-reference doctrine allows a court to "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading").

Although Foxconn does not dispute the authenticity of the documents attached to Masimo's Opposition, the Complaint does not refer to any of these exhibits. *See Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 1250802, at *3 (N.D. Cal. Mar. 16, 2020) (finding no incorporation by reference where a declaration was "not referenced in the FAC, attached as an exhibit, or referenced by defendant"). Consequently, the Court cannot consider the arguments in Masimo's Opposition that are based on these exhibits. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *see also* 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into

account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

Because neither judicial notice nor incorporation by reference apply to the documents attached to the Opposition, the Court declines to consider them at the 12(b)(6) stage and bases its analysis and conclusions solely on the allegations in the Complaint. See *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1022 (E.D. Cal. 2016) ("Matters extraneous to the pleading should not be considered in the context of a motion to dismiss under Rule 12(b)(6), which with exceptions not relevant here must depend on the allegations made within the four corners of the complaint.").

## B.   Direct Infringement

"[F]or a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously." *Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citation omitted, emphasis added).  Foxconn contends that Masimo has failed to plead facts supporting the claim that Foxconn itself directly infringed or to support any legal theory holding it liable for the purportedly infringing acts of Sotera.  (Mem. at 11–13.)  The Court agrees.

### 1.   Direct Liability

The Patents Act holds liable for direct infringement "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . ."  35 U.S.C. § 271(a); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).  Allegations of direct infringement are subject to the Rule 8 pleading standards established by *Twombly* and *Iqbal*.[5]  *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-05469-EDL, 2016 WL

---

[5] Previously, the Federal Circuit had "instructed that Form 18, a sample complaint in the Appendix of Forms to the Federal Rules of Civil Procedure, provides the pleading standard for claims of direct infringement."  *See Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1196 (S.D. Cal. 2013) (citing *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012)).  However, the 2015 amendments to the Federal Rules of Civil Procedure abrogated Rule 84, which had established that forms like Form 18 "suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."  Courts have since concluded that the amendments' abrogation of Rule 84 has invalidated *Bill of Lading*'s decision establishing Form 18 as a pleading standard, leaving only Rule 8's requirements under *Twombly/Iqbal* to govern direct

1719545, at *2 (N.D. Cal. Mar. 9, 2016).  For direct liability, a party must claim that an alleged infringer itself made, used, offered to sell, or sold a patented invention.  *See, e.g., Wing Shing Prod. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 401 (S.D.N.Y. 2007) (holding that direct liability theory for direct infringement requires that a defendant "made, used, offered to sell or sold a patented invention within the United States or imported a patented invention into the United States").

As noted by Foxconn, Masimo has not pled that Foxconn itself makes, uses, offers to sell, sells, or imports infringing products into the United States; rather, Masimo has alleged that only Sotera does so.  (Mem. at 10.)  At most, Masimo claims that Foxconn "announced plans" to make components related to Sotera's ViSi Mobile Monitoring System, such as batteries and sensors, but has not claimed that Foxconn has or is currently doing so.  (Compl. ¶ 26.)  Therefore, the Court understands Masimo's assertions that Foxconn "directed Sotera to manufacture, use, sell, offer for sale, and/or import into the United States" to attempt to hold Foxconn vicariously liable for infringement, rather than directly liable.

To the extent Masimo seeks to hold Foxconn directly liable for direct infringement, the Court finds that it has not pled enough facts to do so.  Offers for sale can form the basis for a claim of direct patent infringement, but only where facts are pled that plausibly show "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001); *see also Mophie, Inc. v. Shah*, No. SACV 13-01321 DMG (JEMx), 2014 WL 12603184, at *2 (C.D. Cal. Aug. 25, 2014) (denying dismissal of direct infringement claim where complaint alleged that defendant made an "offer of sale" of infringing product by "listing a price, photograph of the product, product details, and a link reading 'Buy now!'").  However, where plaintiffs make conclusory allegations that a defendant itself

infringement claims.  *See Vigil Sys. Pty. Ltd. v. Trackit, LLC*, No. 16-CV-198 JLS (JMA), 2016 WL 4595538, at *3 (S.D. Cal. Aug. 22, 2016); *Rembrandt Patent Innovations LLC v. Apple Inc.*, Case No. C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015).

manufactured, used, sold, or offered to sell infringing products, courts have held that they do not state a claim for direct infringement. *See FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-CV-1058 JLS (DHB), 2016 WL 903681, at *4 (S.D. Cal. Feb. 8, 2016) (finding assertions that defendants' infringing activities included "making, using, selling, and/or offering to sell products" were too broad to even meet the lower pleading standard under Form 18); *Medsquire LLC v. Spring Med. Sys. Inc.*, No. 2:11-CV-04504-JHN, 2011 WL 4101093, at *3 (C.D. Cal. Aug. 31, 2011) (granting motion to dismiss direct infringement claim where allegations included only that defendant infringed "by making, using, selling, and/or offering for sale" an infringing product). Therefore, even if Masimo's Complaint is construed as stating that Foxconn itself makes, uses, sells, or offers to sell the allegedly infringing product, it still fails to state a claim that Foxconn is directly liable under § 271(a).

### 2.    Vicarious Liability

When a patentee claims direct infringement through vicarious liability, it "must show that one party directed or controlled the performance of all of the infringing steps to prove direct infringement liability." *Grecia v. VUDU, Inc.,* No. C-14-0775-EMC, 2015 WL 538486, at *4 (N.D. Cal. Feb. 9, 2015). In the parent-subsidiary context, a parent corporation may be liable as a direct infringer under 35 U.S.C. § 271(a) for infringement by subsidiary corporations only if "the evidence reveals circumstances justifying disregard of the status of [the subsidiaries and the parent] as distinct, separate corporations." *A. Stucki Co. v. Worthington Inds., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988).

While the Complaint itself does not identify any theory under which to hold Foxconn liable for Sotera's conduct, Masimo states in its Opposition that it has alleged sufficient facts to state a claim for vicarious liability under both alter ego and agency theories. (Opp'n at 11–14.) However, the Court finds that Masimo has failed to plead facts, under any theory of liability, to hold Foxconn vicariously liable for Sotera's alleged infringement.

19cv1100

1

### a. *Alter Ego Theory of Liability*

It is a fundamental principle of corporate law that a parent and its subsidiary are separate legal entities. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  This principle of corporate separateness generally "insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  However, when the corporate form is used for a wrongful or inequitable purpose, a court may disregard the corporate form and impute the acts of a subsidiary to the parent, under the theory that the subsidiary is an "alter ego" of the parent.  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (Ct. App. 2000).[6]  The alter ego doctrine prevents a parent corporation from escaping liability by abusing corporate privilege through a subsidiary that is, in effect, a sham corporation, to commit wrongful acts.  *Id.*; *see also Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (1988) ("The purpose behind the alter ego doctrine is to prevent defendants who are the alter egos of a sham corporation from escaping personal liability for its debts.") (citation omitted).

A plaintiff seeking to invoke the alter ego doctrine must allege: (1) that there is such a unity of interest and ownership between a subsidiary and its parent corporation that the separate personalities of the two do not exist; and (2) that failure to disregard the corporate form would "sanction a fraud or promote injustice."  *See Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis removed) (citing *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977)); *see also Sonora*, 83 Cal. App. 4th at 538. "Conclusory allegations of alter ego status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *see also Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 984 (N.D. Cal. 2015).

---

[6] In patent cases, federal courts look to the alter ego law of the regional circuit.  *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).  The Ninth Circuit applies the law of the forum state—in this case, California—to determine whether a corporation is the alter ego of an individual.  *Id.* (citing *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993)).

Because it involves an exception to basic principles of corporate law, "[a]lter ego is an extreme remedy, sparingly used." *Sonora*, 83 Cal. App. 4th at 539; *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . .").

Under the first prong of the alter ego test, California courts consider several factors to determine whether there is a unity of interest and ownership between a parent and its subsidiary. These include, but are not limited to: (1) the commingling of funds and other assets, (2) identical equitable ownership of the two entities, (3) use of the same offices and employees, (4) use of the subsidiary as a mere shell for the affairs of the parent, (5) failure to maintain adequate corporate records, (6) failure to adequately capitalize the subsidiary, and (7) the holding out by the parent that it is liable for the debts of the subsidiary. *See Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (citing *Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971)); *see also Gerritsen*, 116 F. Supp. 3d at 1137 (listing additional factors). This list is not exhaustive, and no single factor controls. A court must examine all the circumstances to determine whether the complaint states a plausible claim for liability under an alter ego theory. *VirtualMagic Asia, Inc. v. Fil-Cartoons*, Inc., 99 Cal. App. 4th 228, 245 (2002).

Here, Masimo's Complaint contends that Foxconn "controls" Sotera and directs Sotera to manufacture, market, and sell the infringing products. (*See generally*, Compl.) These inchoate allegations of Foxconn's control and direction over its subsidiary do not state a claim that an alter ego relationship exists between the two. *See Katzir's Floor & Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("[The] mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law"); *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 988 (C.D. Cal. 2013) ("Application of the alter ego doctrine requires some showing that the parent corporation not only dictates general policies, but that it also controls how the

company will be operated on a day-to-day basis.") (internal modifications and quotations omitted).

Further, nowhere in the Complaint does Masimo make even threadbare allegations supporting an alter ego theory of liability. The Complaint does not include any specific facts related to any of the above factors to show that Foxconn and Sotera operated as a single entity, such that Sotera was being used by Foxconn to perpetrate patent infringement. Allegations that fail to make any specific reference to "the elements of alter ego liability, as well as facts supporting each[,]" do not state a claim for alter ego liability. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (internal quotations omitted). Where, as here, the Complaint contains no factual content regarding any of the alter ego factors, the claim against Foxconn fails. *See Barantsevich*, 954 F. Supp. 2d at 988 (finding complaint devoid of facts to support personal jurisdiction over a parent corporation where plaintiff "proffered no evidence, for example, of "undercapitalization, commingled funds or disregard for corporate formalities"); *Gerritsen*, 116 F. Supp. 3d at 1138–1142 (finding no unity of interest where plaintiff failed to allege any specific facts  to show undercapitalization, commingling of funds, or other factors supporting alter ego liability).

Thus, the Court does not find that Masimo has met the pleading standard under 12(b)(6) to hold Foxconn liable under an alter ego theory of liability for Sotera's alleged infringement.

### b.    *Agency Theory of Liability*

A parent corporation can also be held vicariously liable for the acts of a subsidiary corporation if an agency relationship exists between the two entities. "To establish actual agency a party must demonstrate the following elements: '(1) there must be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking.'" *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004) (quoting *Rubin Bros. Footwear, Inc. v.*

19cv1100

*Chemical Bank*, 119 B.R. 416, 422 (S.D.N.Y. 1990)). "There is no agency relationship where the alleged principal has no right of control over the alleged agent." *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 657 F. Supp. 1475, 1481 n. 2 (S.D.N.Y. 1987).

In the Ninth Circuit, courts have generally understood agency theory to fall under two tests. *See Bowoto*, 312 F. Supp. 2d at 1242–43; *see also Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JFRS, 2009 WL 975817, at *7 (N.D. Cal. Apr. 10, 2009). In the first, a party can satisfy the agency test by "showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1298, 1405 (9th Cir. 1994)). In the second, an agency relationship exists "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities." *Sonora*, 83 Cal. App. 4th at 541. To meet this standard, "the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy." *Id.* at 543.

Masimo's agency theory of liability against Foxconn appears to rest on this second test. Masimo argues that its allegations about Foxconn's control of Sotera's management team and over Sotera's "making, using, offering to sell, and/or selling within the United States, and/or importing" the infringing product state an "extensive level of control that Foxconn exercises over Sotera," which in turn establishes agency liability. (*See* Compl. ¶¶ 3, 26, 30, 42, 54, 66, 78, 90, 102, 126; Opp'n at 10–12, 14.) However, these conclusory allegations do not establish that the necessary day-to-day control by Foxconn over Sotera's management, marketing, importation, and sale of the allegedly infringing

products to support a reasonable inference that Sotera was merely an agent or instrumentality of Foxconn. *See whiteCryption Corp. v. Arxan Techs., Inc.*, No. 15-CV-00754-WHO, 2015 WL 3799585, at *3 (N.D. Cal. June 18, 2015) (citing *Sonora*, 83 Cal. App. 4th at 542; *c.f. Wallis v. Centennial Ins. Co., Inc.*, 2013 WL 3803971, at *4 (E.D. Cal. July 19, 2013) (denying motion to dismiss because plaintiffs did "more than recite mere conclusory allegations of agency" and alleged facts establishing that the parent company's control over the subsidiary was "pervasive and continual").

In sum, because Masimo has not stated facts to support a claim that Foxconn is directly or vicariously liable for direct infringement, the Court **GRANTS** Foxconn's Motion as to this claim.

## C.   Active Inducement

Federal law also holds liable as an infringer "[w]hoever actively induces infringement of a patent[.]"  35 U.S.C. § 271(b).  "To state a claim for induced infringement, a plaintiff must plausibly allege that the defendant: (1) had knowledge of the patent-in-suit; (2) knew the induced acts were infringing; and (3) specifically intended to encourage another's infringement."  *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 253 (E.D.N.Y. 2016) (citing *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 135 S. Ct. 1920, 1926 (2015)).  If these elements are pled, a plaintiff can state a claim for induced infringement against a party who "sells infringing devices to customers who use them in a way that directly infringes the method claim."  *AquaTex Indus., Inc. v. Techniche Solns.*, 419 F.3d 1374, 1379 (Fed. Cir. 2005); *see also Randall May Int'l Inc. v. Pearl Corp.*, No. SACV 13-00016 JVS (RNBx), 2013 WL 12130018, at *6 (C.D. Cal. June 3, 2013) ("Sales-related activities, including advertising, solicitation, and product instruction that encourage the infringing use may be acts constituting inducement.").

Here, the Complaint states that Foxconn induced infringement "by marketing and selling the above ViSi Mobile Monitoring Systems, knowing and intending that such systems would be used by customers and end users in a manner that infringes [the patents]."  (Compl. ¶¶ 33, 45, 57, 69, 81, 93, 105, 117, 129.)  Masimo also contends that

Sotera and Foxconn "actively induce direct infringement" of each patent "by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of the ViSi Mobile Monitor." (*Id.* ¶¶ 34, 46, 58, 70, 82, 94, 106, 118, 130.) Lastly, Masimo contends that Sotera and Foxconn "monitored Masimo's patents . . . by hiring former Masimo employees and after previous trade secret misappropriation litigation asserted against Sotera by Masimo" and that both Defendants had knowledge of the patents "no later than the filing of th[e] Complaint." (*Id.* ¶¶ 32, 44, 56, 68, 80, 92, 104, 116, 128.)

### 1.    Knowledge

Masimo's claim that Foxconn knew about its patents prior to suit is unavailing. First, Masimo's claim that Foxconn "monitored" the patents is too vague to state a plausible claim that Foxconn knew about Masimo's intellectual property. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted). Second, the Court cannot reasonably infer that Foxconn's hiring of Masimo's former employees imputed knowledge to Foxconn about the specific patents-in-suit. Third, as Foxconn notes, Masimo itself states that the trade misappropriation litigation that purportedly conferred knowledge of the patents on Foxconn did not, in fact, involve Foxconn—Masimo alleges that it filed that lawsuit against only Sotera. (*See* Compl. ¶¶ 32, 44, 56, 68, 80, 92, 104, 116, 128.) Similarly, then, even assuming that lawsuit involved the patents in question, the Court has no basis to infer that this lawsuit informed Foxconn of Masimo's patents. As such, Masimo has failed to allege a factual basis for Foxconn's pre-suit knowledge of the patents.

As to Foxconn's post-suit knowledge, there is some disagreement among courts as to whether the filing of a complaint can satisfy the knowledge requirement for conduct that post-dates the date of the complaint. *Compare Pacing Techs., LLC v. Garmin Int'l, Inc.*, 2013 WL 444642, at *2 (S.D. Cal. Feb.5, 2013) (recognizing disagreement and

concluding that post-filing knowledge of a patent suffices to state a claim for induced infringement) *with Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) (granting motion to dismiss indirect infringement claim because plaintiff alleged only that the defendants had knowledge of the patent "at least since the date of the suit").

The Court agrees that there is "no reason why a defendant who is directly infringing on a product should avoid liability for an indirect infringement claim when it continues to sell the allegedly infringing product and encourages others to infringe, simply because it happened to learn of the patent in connection with a lawsuit." *Labyrinth Optical Techs.*, 2013 WL 12126111, at *3 (internal quotations omitted); *see also CAP Co. v. McAfee, Inc.*, No. 14-CV-05068-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015) (noting that any infringement immediately stopped by a defendant after the filing of the complaint "is adequately dealt with by limiting damages . . . to products sold after the defendant learned of the patents-in-suit").

Thus, Masimo's claim that Foxconn had knowledge of the patents no later than the filing of the Complaint sufficiently states knowledge of the patent, but only for conduct committed by Foxconn after the filing of the Complaint. *See CAP*, 2015 WL 3945875, at *5; *Pacing Techs.*, 2013 WL 444642, at *2; *Symantec Corp. v. Veeam Software Corp.*, No. C 12–00700 SI., 2012 WL 1965832, at *5 (N.D. Cal. May 31, 2012). On amendment, Masimo may attempt to again state facts about when and how Foxconn became aware of the patents-in-suit before the filing of the Complaint, if it seeks to state claims against Foxconn for pre-filing conduct. *See Bascom Research, LLC v. Facebook, Inc.*, No. C 12-6293 SI, 2013 WL 968210, at *4 (N.D. Cal. Mar. 12, 2013).

### 2. Specific Intent

Active inducement claims also require that a patentee allege specific intent. This requires that a plaintiff establish "that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the act alleged to constitute inducement." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,

No. CV 02-01087 LGB (CWx), 2004 WL 7333730, at *3 (C.D. Cal. Mar. 15, 2004) (citing *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)).

Masimo does not plead enough factual content regarding Foxconn's specific intent. First, the Complaint's conclusory claim that Foxconn knew and intended the products to be used in an infringing manner does not state a claim that Foxconn knew Sotera's acts constituted infringement and specifically intended to encourage those acts. *See Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 4079231, at *5 (N.D. Cal. Sept. 12, 2011) (holding that conclusory allegations of knowledge of infringement do not satisfy the *Twombly*/*Iqbal* pleading standard).

Second, Masimo's claim that Foxconn actively induces infringement by end users by "providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of the ViSi Mobile Monitor" is inadequate to state specific intent for an induced infringement claim. *See Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) (finding no allegations of specific intent where the complaint stated "bald conclusions" that end users following instructions would infringe without detailing how the infringement would occur); *CAP Co.*, 2015 WL 3945875, at *5 (holding that passing references to "user manuals guides, and support articles" were "wholly inadequate for an inference of specific intent"); *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, No. 3:13-CV-1278-GPC-JMA, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) (dismissing claims that "Defendant provides instruction, technical support, and training" because the court could not "plausibly infer that Defendant had the specific intent to induce others to infringe").

Lastly, Masimo's contention that Foxconn marketed and sold an allegedly infringing product cannot, standing alone, state a claim for active inducement without affirmatively alleging a defendant's intent to encourage infringement. *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012)

("Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement."); *Tech. Licensing Corp. v. Technicolor USA, Inc.*, No. CIV. 2:03-1329, 2010 WL 4070208, at *3 (E.D. Cal. Oct. 18, 2010) (dismissing inducement claim where plaintiff alleged only that defendant "manufactures, uses, and sells" infringing products but did not allege specific intent to encourage infringement); *Pieczenik v. Abbott Labs.*, 2011 WL 1045347, at *7 (D.N.J. Mar. 23, 2011) (finding insufficient facts to support claim for inducement where plaintiff alleged only that defendant sold the purportedly infringing items without facts from which to infer knowledge or intent).

While Masimo does not have to *prove* specific intent at this point in the litigation, it must provide some factual content from which the Court can infer that Foxconn's marketing, advertising, or other promotion of the allegedly infringing products reflect "an affirmative intent that the product be used to infringe" which "actively aids another's infringement." *See AntiCancer, Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 745 F. Supp. 2d 1165, 1170 (S.D. Cal. 2010). As it stands, the Complaint simply does not provide any factual support for the inference that Foxconn had an affirmative intent to infringe the patents, beyond mere knowledge of an allegedly infringing act. *See Revolution Eyewear*, 2004 WL 7333730, at *3. Accordingly, because Masimo has sufficiently pled post-filing knowledge but not specific intent, the Court **GRANTS** Foxconn's Motion as to Masimo's active inducement claim.

## D.    Contributory Infringement

Under 35 U.S.C. § 271(c), a party is liable for infringement if he "offers to sell or sells within the United States or imports into the United States . . . a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." To establish contributory infringement, then, a plaintiff must show

19cv1100

that defendants had knowledge of plaintiff's rights in the patents in suit, knew of a third party's infringement, and sold components especially made for infringing use and not capable of substantial noninfringing uses. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).

Here, Masimo's Complaint alleges the following as to contributory infringement regarding each of the nine patents at issue:

> Upon information and belief, Sotera and Foxconn contributorily infringe because, among other things, Sotera offers to sell and/or sells within the United States, and/or imports into the United States, components of the ViSi Mobile Monitoring System that constitute material parts of the invention of the asserted claims of the [patents], are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Sotera and Foxconn to be especially made or especially adapted for use in an infringement of the [patents].

(Compl. ¶¶ 35, 47, 59, 71, 83, 95, 107, 119, 131.)  The Complaint also includes detailed descriptions of the sensors, displays, and other mechanisms included in Defendants' ViSi Mobile Monitoring System that "include[] all the limitations" of the claims in each patent—details that Masimo claims "confirm Foxconn's contributory infringement[.]" (*See* Compl. ¶¶ 31, 43, 55, 67, 79, 91, 103, 115, 127; Opp'n at 18.)  For the reasons stated below, the Court finds that Masimo has not sufficiently stated all elements of a claim for contributory infringement against Foxconn.

### 1.   Knowledge of Patents and Infringing Use

Section 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).  As stated in Section III.C, *supra*, Masimo has alleged Foxconn's knowledge of the patents in suit with regard to post-filing conduct.  This same reasoning can be applied to Foxconn's knowledge of the allegedly infringing nature of the components.  *See id.* (finding that defendant could not be guilty of contributory infringement in the absence of showing that at the time of the alleged contributorily infringing acts, the defendant "had already acquired the requisite knowledge" that the products were infringing).  As with

Masimo's claim for induced infringement, the Court finds that Masimo has sufficiently pled knowledge for contributory infringement only for conduct post-dating the filing of the Complaint.   As with the active inducement claim, Masimo may amend this claim to allege additional facts regarding when and how Foxconn became aware of the patents-in-suit before the filing of the Complaint, if Masimo seeks to state a contributory infringement claim for that time period. *See Bascom*, 2013 WL 968210, at *4.

2.    <u>Suitability for Other Substantial Non-Infringing Uses</u>

"For purposes of contributory infringement, the [substantial noninfringing use] inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *In re Bill of Lading*, 681 F.3d at 1338 (emphasis in original).   A substantial noninfringing use is any use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).

The Complaint's allegations, including its technical descriptions of the infringing product, suffice to show that the ViSi Mobile Monitoring System have no other substantial non-infringing uses.   Masimo has established that it develops noninvasive patient monitoring technologies, secured through nine patents for mobile, wearable monitors and alarm suspend systems, that monitor physiological indicators such as pulse oximetry, heart rate, blood pressure, electrocardiogram, and ventilation. (*See* Compl. ¶¶ 14, 16–25.)   Masimo also claims that the function and purpose of Sotera's ViSi Mobile Monitoring System is substantially the same—"a platform for vital signs monitoring, including pulse oximetry, pulse rate, and respiration rate" using noninvasive patient monitoring technology. (*Id.* ¶ 26.)   Masimo also takes pains to describe the structure and function of each hardware and software component that comprises the ViSi Mobile Monitoring—including but not limited to the pulse oximetry sensor (*id.* ¶ 31), sensor communication ports and interfaces (*id.* ¶ 43), housing, mounting, and portability (*id.* ¶¶ 55, 103), and hardware processors (*id.* ¶¶ 67, 79, 91)—to explain how they overlap with "all of the limitations" of claims associated with each of Masimo's patents.

At this stage in the litigation, the Court must take as true these allegations about the substantial similarities in the specific design and purpose of this technology.  From these descriptions, the Court can infer, construing all facts in favor of Plaintiff, that the ViSi Mobile Monitoring System is not suitable for any other substantial non-infringing use.

### 3.    Offers to Sell or Sale of Components

For purposes of its contributory infringement claim, Masimo alleges that Foxconn and Sotera "offer to sell and/or sell . . . and/or import" components of the allegedly infringing product.  While the Court recognizes that some courts diverge on the question of what allegations are necessary to state a claim for contributory infringement,[7] it finds that this claim is wholly conclusory regarding Foxconn's contribution to any allegedly infringing activity and therefore does not sufficiently state this element of the claim.  Merely stating that Foxconn offers to sell or sells the infringing product, without presenting any factual underpinnings to support that claim, fails to meet Rule 8's pleading standards.  *See Randall May Int'l Inc.*, 2013 WL 12130018, at *7 (dismissing contributory infringement claim because allegations that defendant was "making, using, selling, and offering for sale the Accused Products . . . are conclusory and do not, in themselves, state a claim"); *see also Google LLC v. Princeps Interface Techs. LLC*, No. 19-CV-06566-EMC, 2020 WL 1478352, at *6 (N.D. Cal. Mar. 26, 2020); *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 WL 2047553, at *5 (N.D. Cal. May 2, 2018) (granting motion to dismiss contributory infringement claim where plaintiff's

---

[7] *See Sony Corp. v. LG Elecs. U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1063 (C.D. Cal. 2011) (recognizing "a split in authority as to whether *Iqbal* and *Twombly* demand that a plaintiff alleging a claim for contributory infringement plead facts that establish the individual elements set forth in *Lucent Techs*") (citing cases); *see also Unilin Beheer B.V. v. Tropical Flooring*, No. CV 14-02209 BRO (SSx), 2014 WL 2795360, at *6 (C.D. Cal. June 13, 2014) (finding conclusory claim of contributory infringement "sufficient to withstand motion to dismiss, as no detailed factual allegations regarding each element is necessary"); *Rambus, Inc. v. Nvidia Corp.*, No. C 08-3343 SI, 2008 WL 4911165, at *3 (N.D. Cal. Nov. 13, 2008) (finding claim that defendant "has contributed to and continues to contribute to infringement" sufficient to withstand a motion to dismiss, although it is "rather conclusory"); *but see Irori Techs., Inc. v. Luminex Corp.*, No. 13-CV-2647-BEN NLS, 2014 WL 769435, at *5 (S.D. Cal. Feb. 25, 2014) (dismissing contributory infringement claim because there were "no additional factual allegations in the Complaint . . . that would allow this Court to infer either knowledge [of infringement] or third-party infringement").

1   "merely formulaic recitation of Section 271(c) was not entitled to the presumption of
2   truth") (citing *Iqbal*, 556 U.S. at 681).

3       Masimo has stated the elements of post-filing knowledge and no other substantial
4   non-infringing uses.  However, Masimo has not properly alleged Foxconn's involvement
5   in selling or offering to sell the ViSi Mobile Monitoring System to state a complete claim
6   for contributory infringement.  As such, the Court **GRANTS** Foxconn's Motion as to
7   Masimo's contributory infringement claim.

8   **IV.   CONCLUSION**

9       Accordingly, the Court **GRANTS** Foxconn's Motion to Dismiss (ECF No. 17).  If
10  Masimo wishes to file an amended complaint, it must do so by **June 8, 2020**.

11      **IT IS SO ORDERED.**

12

13  **DATED: May 8, 2020**

14                                              Hon. Cynthia Bashant
                                                United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28