1
2
3
4
5
6
7

8           **UNITED STATES DISTRICT COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  MASIMO CORPORATION, | Case No. 19-cv-01100-BAS-NLS |
| 11                              Plaintiff, | **ORDER:** |
| 12  v. | **(1) GRANTING IN PART DEFENDANT HON HAI'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 62);** |
| 13  SOTERA WIRELESS; HON HAI PRECISION INDUSTRY CO., LTD., | |
| 14 | **AND** |
| 15                              Defendants. | **(2) TERMINATING AS MOOT PLAINTIFF'S MOTION TO SEAL (ECF No. 66)** |
| 16 | |
| 17 | |

18      Plaintiff Masimo Corporation ("Masimo") filed this patent infringement action on

19  June 12, 2019 against Defendants Sotera Wireless, Inc. ("Sotera") and Hon Hai Precision

20  Industry Co. Ltd. ("Hon Hai") (collectively, "Defendants").[1]  (Compl., ECF No. 1.)  The

21  Court previously granted Hon Hai's Motion to Dismiss Plaintiff's Complaint on May 8,

22  _____

23  [1] The Court previously noted that the parties did not address the appropriate name by which to identify
    Defendant Hon Hai.  (Order Granting Foxconn's Mot. to Dismiss Pl.'s Compl. ("Order Granting Mot. to

24  Dismiss") at 1 n.1, ECF No. 46.)  Hon Hai now states that it should be referred to by this name instead of
    "Foxconn" because Hon Hai is the parent company of "an assortment of affiliated legal entities" also using

25  Foxconn as an identifier.  (Mem. of P. & A. in supp. of Mot. to Dismiss FAC ("Mem. of P. & A.") at 1
    n.1, ECF No. 62-1.)  Masimo disputes this, claiming that Foxconn and Hon Hai are synonymous.  (Opp'n

26  to Mot. to Dismiss ("Opp'n") at 12, ECF No. 68.)  To avoid confusion with other corporate entities, the
    Court will refer to the parent company as "Hon Hai," consistent with the named defendant in the original

27  Complaint and the FAC.  This includes modifying Masimo's allegations to refer to "Hon Hai" instead of
    "Foxconn" where necessary, as Masimo intends the terms to be synonymous.  However, the Court's use

28  of this identifier is not a legal conclusion about any of the issues underlying the instant Motion to Dismiss.

2020.  (*See* Order Granting Mot. to Dismiss.)   Plaintiff then filed a First Amended Complaint ("FAC") on June 8, 2020.  (ECF No. 52.)  Hon Hai now brings a Motion to Dismiss Plaintiff's FAC ("Motion") for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Mot., ECF No. 62.)  The Court finds the Motion suitable for determination without oral argument.  *See* CivL.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** Hon Hai's Motion.

## I.   BACKGROUND[2]

In its FAC, Masimo once again states infringement claims for each of its nine patents related to a noninvasive patient monitoring device called the "ViSi Mobile Monitoring System" ("ViSi Mobile" or "Accused Product") and seeks to hold Han Hai liable directly and as Sotera's parent corporation.  (*See generally*, FAC.)  The FAC describes ViSi Mobile

> as a platform for vital signs monitoring, including pulse oximetry, pulse rate, and respiration rate. The ViSi Mobile Monitoring System includes a ViSi Mobile Monitor, ViSi Mobile Thumb Sensor, ViSi Mobile Cuff Module, ViSi Mobile Chest Module, ViSi Mobile Wrist Strap, ViSi Mobile Wrist Cradle, ViSi Mobile Remote Viewer, and associated computer resources and cloud-based databases.

(*Id.* ¶ 53.)  Masimo alleges that Hon Hai "directly or indirectly controlled Sotera's activities" to make, use, offer to sell, and/or sell this system within the United States and is involved in the manufacturing and supply of the components—such as batteries, housings, circuit boards, cables, and sensors—that comprise the system.  (*Id.* ¶¶ 54–55.)  Plaintiff further claims that Hon Hai collects data from the ViSi Mobile device in the United States and markets the ViSi Mobile Monitoring System as a "smart hospital product" on the U.S.-based website for Foxconn Health Technology Business Group.  (*Id.* ¶¶ 56–57.)

Specifically, the FAC includes allegations that Hon Hai directly and contributorily infringed the claims of Masimo's patents related to ViSi Mobile and that it is vicariously liable for Sotera's infringing conduct.  To this end, Masimo adds several allegations in the

---

[2] The Court adopts the factual background from its previous order regarding other specifics about the technology at issue in this case and the patents alleged to be infringed.  (*See* Order Granting Mot. to Dismiss at 2–4.)

FAC regarding alter ego and agency theories of liability, as well as its direct and contributory infringement claims as they relate to Hon Hai, which are described in more detail in Section III, *infra*.  (*See id.* ¶¶ 20–52.)

Masimo again seeks monetary relief against both Defendants and equitable relief against Sotera, Hon Hai, and "officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them" for the alleged infringement of each of its nine patents.  (*See* FAC, Prayer for Relief.)

## II.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).[3]  The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112, 1135 (9th Cir. 2020) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)) ("It is important to note that this

---

[3] "A motion to dismiss for failure to state a claim generally raises a 'purely procedural question not pertaining to patent law,' for which courts apply "the law of the regional circuit.'" *Labyrinth Optical Techs., LLC v. Fujitsu Am., Inc.*, No. SACV 13-0030 AGM (LGx), 2013 WL 12126111, at *1 (C.D. Cal. Aug. 21, 2013) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007)). Accordingly, the Court applies the *Twombly/Iqbal* pleading standard—not the standard under Form 18— to Masimo's claims. (*See* Order Granting Foxconn's Mot. to Dismiss Compl. at 8 n.5, ECF No. 46 (citing *Vigil Sys. Pty. Ltd. v. Trackit, LLC*, No. 16-CV-198 JLS (JMA), 2016 WL 4595538, at *3 (S.D. Cal. Aug. 22, 2016); *Rembrandt Patent Innovations LLC v. Apple Inc.*, Case No. C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015)).)

1  case reaches us at the motion to dismiss stage, where Oakland has the burden of meeting a
2  plausibility standard, not a reasonable probability or more-likely-than-not standard.").

3      Nonetheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]
4  to relief' requires more than labels and conclusions, and a formulaic recitation of the
5  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v.*
6  *Allain*, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need not accept "legal
7  conclusions" as true.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) ("Where
8  a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops
9  short of the line between possibility and plausibility of 'entitlement to relief.'").  Further,
10 despite the deference the court must pay to the plaintiff's allegations, it is not proper for the
11 court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that
12 the defendants have violated the . . . laws in ways that have not been
13 alleged." *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*
14 *Carpenters*, 459 U.S. 519, 526 (1983).

15     As a general rule, a court freely grants leave to amend a complaint that has been
16 dismissed.  Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806
17 F.2d 1393, 1401 (9th Cir. 1986).  However, leave to amend may be denied when "the court
18 determines that the allegation of other facts consistent with the challenged pleading could
19 not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno*
20 *v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

21 **III.  ANALYSIS**

22     Hon Hai moves to dismiss all claims.  First, Hon Hai argues that the amended
23 allegations "do not meet the pleading standards for vicarious infringement."  (Mem. of P.
24 & A. at 1.)  As to Masimo's alter ego theory of liability, Hon Hai states that it fails because
25 "(1) Masimo does not allege any facts supporting the conclusion that Sotera is a sham that
26 exists solely as an inequitable vehicle for fraud; and (2) the facts Masimo alleges are
27 insufficient to show that Sotera and Hon Hai have a unity of interest and ownership."  (*Id.*
28 at 1–2.)  As to Masimo's agency claims, Hon Hai argues that there are insufficient facts to

1    support "that Hon Hai controls day-to-day operations of Sotera." (*Id.*) Lastly, Hon Hai

2    moves for dismissal of the direct and contributory infringement claims because, it argues,

3    "Masimo conflates Hon Hai and its affiliates." (*Id.* at 2.)

4        The Court first addresses the evidentiary issues raised by the documents submitted

5    in support of the parties' briefings before turning to the claims for direct and vicarious

6    liability.

7        **A.    Evidentiary Issues**

8        The parties once again submit materials outside the pleadings to support their

9    arguments at the dismissal stage. Hon Hai attaches its annual report to show that its many

10   affiliated legal entities use the "Foxconn" name. (Mem. of P. & A. at 1 n.1 (citing Annual

11   Rep., Ex. A to Decl. of Ying Lu ("Lu Decl."), ECF No. 62-3); Reply in supp. of Mot.

12   ("Reply") at 9–10, ECF No. 69 (citing Webpage, Ex. B to Decl. of Hua Chen ("Chen

13   Decl."), ECF No. 69-1).) It also attaches exhibits to its Reply to show that Sotera is insured

14   and therefore not undercapitalized. (Reply at 3–4 (citing Sotera's Rule 26 Disclosures, Ex.

15   A to Chen Decl., ECF No. 69-1).) Masimo includes multiple exhibits to support its

16   argument that Hon Hai has sufficient control over and involvement in Sotera's operations

17   to be held liable for infringement and to support its allegations that Hon Hai seeks to have

18   Sotera file bankruptcy in bad faith. (*See generally*, Opp'n to Mot. to Dismiss ("Opp'n"),

19   ECF No. 68; *see also* Exs. 1–8, 10 to Decl. of Baraa Kahf, ECF No. 67-1 (filed under seal),

20   Ex. 9 to Kahf Decl., ECF No. 68-1.)

21       "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under

22   Rule 12(b)(6), '[r]eview is limited to the complaint.'" *Lee v. City of Los Angeles*, 250 F.

23   3d 668, 688 (9th Cir. 2001) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274

24   (9th Cir. 1993)). If a court considers documents extraneous to the pleadings on a 12(b)(6)

25   motion, the court must treat the motion as a motion for summary judgment under Rule 56.

26   Fed. R. Civ. P. 12(d). However, "[t]here are two exceptions to this rule: the incorporation-

27   by-reference doctrine and judicial notice under Federal Rule of Evidence 201." *Khoja v.*

28   *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also United States v.*

*Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (considering whether exhibits attached to the Government's opposition to a Rule 12(b)(6) motion could be considered under the doctrine of incorporation-by-reference or judicial notice).

> 1.   Judicial Notice

Judicial notice permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* 201(b)(1)–(2). The court may take judicial notice on its own. *Id.* 201(c)(1). "Facts subject to judicial notice may be considered on a motion to dismiss." *Maiman v. Talbott*, No. SACV 09–0012 AG (ANx), 2011 WL 13065750, at *2 (C.D. Cal. Aug. 29, 2011) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385 (9th Cir. 1987)). However, "accuracy is only part of the inquiry under Rule 201(b). A court must also consider—and identify—which fact or facts it is noticing from [a document]. Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

> a.   *Hon Hai's exhibits*

Hon Hai submits excerpts from its annual report and a screenshot of a webpage to support its argument that the website offering for sale the Accused Product was not attributable to Hon Hai, but to other Foxconn affiliates. (Ex. B to Chen Decl.)

As to the annual report, Hon Hai argues that because Masimo did not dispute its accuracy, judicial notice is appropriate. (Reply at 1 n.1.) However, the fact that Masimo did not dispute its accuracy does not mean that the report itself, or the facts contained therein, are judicially noticeable. As stated above, Rule 201 requires that a judicially noticeable fact be both beyond reasonable dispute and originate from a source whose accuracy cannot be reasonably questioned. Here, the report is attached to a declaration from defense counsel and appear to be part of a discovery production. (*See* Lu Decl. ¶ 3.) There is no indication that the facts in the report are based on an irrefutable source such

that the Court could take judicial notice of even the existence of the report, let alone the truth of its content.  *See, e.g.*, *In re Am. Apparel, Inc. S'holder Derivative Litig.*, No. CV 10-06576 MMM RCX, 2012 WL 9506072, at *18 (C.D. Cal. July 31, 2012) (taking judicial notice of corporate filings with the SEC only for their existence and contents, not for "the truth of information contained in them"); *U.S. ex rel. Calilung v. Ormat Indus., Ltd.*, No. 3:14-CV-00325-RCJ, 2015 WL 1321029, at *9 (D. Nev. Mar. 24, 2015) (same).  Similarly, regarding the webpage, the Court does not know who maintains the website or how information on the webpage is obtained.  Thus, the facts contained therein are not from sources whose accuracy is beyond question.  Therefore, judicial notice is inappropriate. *See Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012).

Second, Hon Hai argues that the presence of insurance representatives at the Early Neutral Evaluation and the fact of Sotera's insurance coverage are also properly subject to judicial notice because these facts are accurately and readily determined and not subject to dispute.  (Reply at 3 n.3.)  Hon Hai alleges that evidence of insurance coverage is contained in Sotera's Rule 26 Initial Disclosures and on the docket in a minute entry for the Early Neutral Evaluation Conference, where insurance representatives were purportedly present. (Chen Decl. ¶¶ 2–3.)  The minute entry, however, does not indicate whether insurance representatives were present or not.  (ECF No. 40.)  As such, the Court does not see the relevance of taking judicial notice of this entry and declines to do so.  *United Safeguard Distributors Ass'n v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 942 (C.D. Cal. 2015) (citing *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998)) ("[T]he court may deny a request for judicial notice of facts that are not relevant to the question at issue.").

As to the initial disclosures, the facts in these documents were presumably based on Sotera's business records and other internal documents.  These facts are therefore not "generally known" and derived from sources whose reliability is beyond doubt.  *See Leonhart v. Nature's Path Foods, Inc.*, No. 13-CV-00492-BLF, 2014 WL 6657809, at *3 (N.D. Cal. Nov. 21, 2014) (quoting Fed. R. Evid. 201(b)) (denying request for judicial

notice of initial disclosures because "they do not contain facts that 'can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned'"). As such, the Court declines to take judicial notice of this exhibit as well.

b. *Masimo's exhibits*

Masimo's exhibits include Sotera's board meeting minutes, portions of slideshow presentations presumably made to the board, internal emails, and a job description. (Kahf Decl. ¶¶ 1–11; Exs. 1–10 to Kahf Decl.) In this case, the exhibits are documents produced by Sotera in response to discovery requests. (*See* Kahf Decl. ¶ 11 (identifying Exhibit 10 as "a document Sotera produced on July 10, 2020, bearing production numbers SOTERA 00023769 and -00023771.").) As stated above, Sotera's business records are not a source whose accuracy cannot be reasonably questioned. Thus, these documents are not suitable for judicial notice. *See United Safeguard Distributors*, 145 F. Supp. 3d at 942; *U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC*, No. 11-CV-04577 CW NC, 2012 WL 5389912, at *4 (N.D. Cal. Nov. 5, 2012) (declining to take judicial notice of "documents produced in discovery from other parties" because "they are not undisputed facts, and the Court cannot readily ascertain the accuracy . . . of the documents").

Further, the facts in these documents are not properly subject to judicial notice because their meaning—*e.g.*, whether they reflect Hon Hai's control of Sotera's day-to-day operations or its bad faith attempt to have Sotera seek bankruptcy—is subject to reasonable dispute. *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1165 (N.D. Cal. 2019) (declining to take judicial notice of an email produced during discovery because "the meaning of the email is subject to reasonable dispute"); *see also Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1138 (S.D. Cal. 1998) ("The court proceeds with particular caution with respect to a request for judicial notice, when, as here, it is urged so to resolve a fundamental, dispositive factual dispute"). Accordingly, the Court declines to take judicial notice of these documents.

19cv1100

## 2. Incorporation-By-Reference

The incorporation-by-reference doctrine permits courts to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).[4] Under this circuit's precedent, the doctrine of incorporation-by-reference allows consideration of the following extrinsic evidence at the Rule 12(b)(6) stage: (1) materials attached to the complaint that are referenced by the complaint; (2) materials not attached to the complaint if the complaint "necessarily relies" on them and the complaint refers to the documents, the documents are central to the plaintiff's claim, and no party questions their authenticity; and (3) materials not attached to the complaint or referred to in the complaint, but the plaintiff's claim depends on the contents of the documents and the parties do not dispute their authenticity. *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

---

[4] Generally, the incorporation-by-reference doctrine applies to documents that a *defendant* seeks to submit in support of a 12(b)(6) motion. *Branch*, 14 F.3d at 453 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762–63 (2d ed. 1990)) ("[W]hen [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading."), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 1250802, at *3 (N.D. Cal. Mar. 16, 2020) ("The present situation does not fall within the incorporation by reference doctrine because plaintiffs (rather than defendant) seek to incorporate a new document outside of their own initial pleadings."). However, other district courts, including in this district, have applied incorporation-by-reference to documents attached to oppositions. *See Gerritsen v. Warner Bros. Entm't Inc*., 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) ("Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss, however, if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012) (noting that the plaintiffs' declaration submitted in support of their opposition to a motion to dismiss could only be considered if the document was attached to the complaint, incorporated by reference, or subject to judicial notice); *Lemperle v. Wash. Mut. Bank*, No. 10-cv-1550-MMA POR, 2011 WL 197590, at *2 (S.D. Cal. Jan. 20, 2011) (considering a letter attached to plaintiff's opposition pursuant to the incorporation-by-reference doctrine). Because no controlling authority precludes the application of the incorporation-by-reference doctrine to materials submitted by a plaintiff in opposition, the Court applies the doctrine to Masimo's exhibits.

The exhibits attached to the briefings are not attached to the FAC, nor does the FAC refer to these specific documents. Thus, the Court considers whether Masimo's claims depend on the contents of the documents and whether the parties dispute their authenticity. *Hsu*, 213 F. Supp. 3d at 1281.

a. *Hon Hai's exhibits*

The authenticity of Hon Hai's exhibits (the annual report, Sotera's initial disclosures, and the webpage) is not disputed by either party. The annual report, however, does not "form the basis of any claim" in the FAC such that it is central to Masimo's claims. *See Khoja*, 899 F.3d at 1003 (finding that the district court abused its discretion by incorporating an exhibit that was not extensively referenced in the complaint and did not form the basis of any claim in the complaint); *see also Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1085 n.1 (9th Cir. 2020) (incorporating by reference a disclosure where the plaintiff alleged claims under the Fair Credit Reporting Act, which requires "clear and conspicuous disclosures" about obtaining consumer reports); *Mueller v. San Diego Entm't Partners, LLC*, 260 F. Supp. 3d 1283, 1293 n.1 (S.D. Cal. 2017) (incorporating by reference a subscription agreement attached to motion to dismiss that was central to securities and contract claims). While the report illustrates Hon Hai's corporate structure with its various "affiliated companies," this is not dispositive of whether an alter ego or agency relationship exists between Hon Hai and Sotera. *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) ("[R]eferences in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship."), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).

Further, Masimo's claims do not depend on the information contained in the initial disclosures. The fact of Sotera's insurance coverage—for which the Rule 26 disclosures are proffered—are not necessary or sufficient for any of Masimo's claims.

The webpage, however, forms the basis for Masimo's direct infringement claim against Hon Hai. According to Masimo, the page constitutes the offer of sale of the

- 10 -

Accused Product purportedly made by Hon Hai (FAC ¶ 57 ("[O]n information and belief, Foxconn has offered for sale the ViSi Mobile Monitoring System on its U.S.-based website for the Foxconn Health Technology Business Group"),[5] while Hon Hai cites to the same page to show that this offer was made by its affiliate, and not by the parent company itself. As such, the Court finds it appropriate to incorporate this exhibit by reference.

b.   *Masimo's exhibits*

Sotera provided the exhibits attached to Masimo's Opposition in response to discovery requests; the exhibits themselves bear bates stamps indicating the documents were produced in discovery. (*See* Kahf Decl. ¶¶ 2–11.) Thus, they are self-authenticating. *See Barefield v. Bd. of Trustees of Cal. State Univ., Bakersfield*, 500 F. Supp. 2d 1244, 1257–58 (E.D. Cal. 2007) (citing *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 777–78 (9th Cir. 2002) ("Authentication-by-production is permitted when the party identifies who produced the document, or if the party opponent admits to having produced it.").[6]

However, while the contents of the exhibits correspond to certain factual allegations raised in the FAC, the Court does not find that the claims in the FAC necessarily depend on the contents of most of these documents at this stage in the litigation.  While these exhibits contain facts that, if true, supplement the theories of liability in the FAC, they are not central to any of Plaintiffs' claims.  *See Khoja*, 899 F.3d at 1003; *see also Ariz. Civil Constructors, Inc. v. Colony Ins. Co.*, No. 2:20-cv-00010-JAD-DJA, 2020 WL 5042778, at *3 (D. Nev. Aug. 25, 2020) (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)) (declining to incorporate by reference documents attached to an opposition to a motion to dismiss that "would provide additional factual support for [plaintiffs'] claims" because "a deficient pleading cannot be cured by new allegations raised in a plaintiff's response to a motion to dismiss").  As such, the Court declines to incorporate by reference the exhibits attached to Masimo's Opposition.

---

[5] Masimo offered the same webpage in support of its opposition to Hon Hai's first motion to dismiss the Complaint.  (*See* Ex. M to Decl. of Brian C. Claassen, ECF No. 33-1.)

[6] This is also true for Exhibit 10, which Hon Hai objects to on the grounds of authenticity and relevance. (Reply at 2 n.2.)

In sum, the Court incorporates by reference only the webpage attached to the Reply (Ex. B to the Chen Decl.).  The remaining exhibits are not considered by the Court in its analysis of the Motion to Dismiss the FAC.  *See Gerritsen*, 112 F. Supp. 3d at 1021 ("Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice.").[7]

## B.  Direct Liability for Direct Infringement

The Patents Act holds liable for direct infringement "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . ."  35 U.S.C. § 271(a); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).  "[F]or a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously."  *Aristocrat Tech. Austrl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citation omitted); *Sorensen v. Black & Decker Corp.*, No. 06-cv-1572-BTM-CAB, 2007 WL 951839, at *3 (S.D. Cal. Feb. 27, 2007) (holding that direct patent infringement requires a plaintiff to show that a parent company either: "(1) makes, uses, offers to sell, sells, or imports products that use the [] patent process without authorization; or (2) controls similar conduct undertaken by its subsidiaries such that it justifies piercing the corporate veil").  Allegations of direct infringement are subject to the Rule 8 pleading standards established by *Twombly* and *Iqbal*.  *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-05469-EDL, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016).

The FAC alleges that Hon Hai's "use and offer for sale of the ViSi Mobile directly infringe" each patent.  (FAC ¶¶ 70, 85, 100, 115, 130, 145, 160, 175, 190.)  Specifically, Masimo alleges that Hon Hai:

- "us[es] the ViSi Mobile to collect 12 million hours of de-identified vital signs data from more than 300,000 patient sessions";

---

[7] Because the Court did not consider any of Masimo's exhibits in deciding Hon Hai's Motion, the Motion to Seal these exhibits (ECF No. 66) is **TERMINATED AS MOOT**.

- offers the ViSi Mobile for sale on the website of Foxconn Health Technology Business Group ("FHTBG");

- promoted the device as "part of its smart hospital products that follow the patient throughout the continuum of care," which has since been removed from its website; and

- "touts the ViSi Mobile Monitoring System as its own product."

(*Id.*; *see also* FAC ¶¶ 56–57.)

Hon Hai argues Masimo's failure to distinguish FHTBG from Hon Hai is fatal to its claim that Hon Hai directly infringed the patents in question.  (Mem. of P. & A. at 16–17.) In support, Hon Hai provides a screenshot of the FHTBG website where the Accused Product is offered for sale, noting that nowhere on the webpage is Hon Hai identified as the entity offering the product for sale.  (Reply at 9–10; Ex. B to Chen Decl.)  Masimo does not dispute this but argues that FHTBG is a "division of Foxconn."  (Opp'n at 10.)  Masimo does not clarify the status of the other entities cited in the FAC.

Masimo's allegation about FHTBG's website is not sufficient to state a claim against Hon Hai.[8]  Although it argues that it is "at least entitled to the inference that FHTBG is part, or a division of, Hon Hai" (Opp'n at 6), this alone does not plausibly show that FHTBG's conduct is attributable to Hon Hai.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995) (referring to a subsidiary as a "division" of Kodak was not evidence that the two companies operated as "single economic entity").  Moreover, Masimo does not present any other legal theory under which Hon Hai should be held responsible for the acts of a division.

---

[8] To the extent Hon Hai argues that the FAC's reference to "Foxconn" alone does not properly identify Hon Hai, the Court does not find this argument persuasive.  Masimo clearly intends "Foxconn" to refer to Hon Hai Precision Industry Co. Ltd., as indicated in the very first sentence of its FAC, and Masimo refers to "Foxconn" as the party responsible for holding out the accused product for sale.  (FAC ¶ 3 (using "Foxconn" as a stand-in for Hon Hai and identifying Foxconn—"also known as Foxconn Technology Group"—as "a multinational electronics manufacturing company" based in Taiwan with "an undisclosed stake in Sotera" and control of Sotera's management team).)

The remaining allegations in the FAC do not contain enough factual content to allow the Court to reasonably infer that Hon Hai's conduct constituted direct infringement.  First, the allegation that Hon Hai collected data from patient sessions does not claim that Hon Hai "made, used, offered to sell, or sold" ViSi Mobile without authorization.  Second, the conclusory allegation that Hon Hai "touted" the Accused Product as its own, without any factual support, is too vague to raise a colorable claim that Hon Hai directly infringed.  Lastly, the allegation of Hon Hai's "promotion" of the ViSi Mobile Monitoring System as "part of its smart hospital products" does not state a claim for direct infringement.  Specifically, Masimo does not describe what this promoting activity entailed such that it plausibly shows Hon Hai offered to sell or sold the Accused Product.  *See, e.g.*, *E.Digital Corp. v. Microsemi Corp.*, No. 15-CV-319-H-BGS, 2015 WL 11237472, at *3 (S.D. Cal. July 28, 2015) (finding a pleading that "public websites that describe the functionality and use of the accused products in an infringing manner" and claims that defendant made available "informational material that encourages customers to use the accused products" in an infringing manner sufficient to state a claim for direct infringement); *Mophie, Inc. v. Shah*, No. SACV 13-01321 DMG (JEMx), 2014 WL 12603184, at *2 (C.D. Cal. Aug. 25, 2014) (denying dismissal of direct infringement claim where complaint alleged that defendant made an "offer of sale" of infringing product by "listing a price, photograph of the product, product details, and a link reading 'Buy now!'").[9]

In sum, the FAC does not contain enough specific facts to allege a clear and definite theory of direct liability against Hon Hai for direct infringement.  Accordingly, the Court **GRANTS** Hon Hai's Motion to Dismiss this claim.

---

[9] Promotion of a product generally supports claims of active inducement, a cause of action that, while included in the Complaint, was not included in the FAC.  *See Techno View IP, Inc. v. Sony Interactive Entm't LLC*, No. SACV 17-01268 CJC (JCGx), 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) ("[W]here, as here, a party, with knowledge of another party's patent, advertises or promotes its product for use in an infringing manner, this is sufficient to support an inference that the promoting party intended to induce infringement.") (citations omitted); *see also Randall May Int'l Inc. v. Pearl Corp.*, No. SACV 13-00016 JVS (RNBx), 2013 WL 12130018, at *6 (C.D. Cal. June 3, 2013) ("Sales-related activities, including advertising, solicitation, and product instruction that encourage the infringing use may be acts constituting inducement.").

### C.   Direct Liability for Contributory Infringement

Under 35 U.S.C. § 271(c), a party is liable for contributory infringement if it

offers to sell or sells within the United States or imports into the United States . . . a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

To establish contributory infringement, then, a plaintiff must show that defendants had knowledge of plaintiff's rights in the patents-in-suit, knew of a third party's infringement, and sold components especially made for infringing use and not capable of substantial noninfringing uses. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).[10]

The FAC reiterates that "Foxconn" contributorily infringes by "mak[ing] and offer[ing] to sell and or sell[ing] . . . components of the ViSi Mobile Monitoring System" protected under each patent.  (FAC ¶¶ 76, 91, 106, 121, 136, 151, 166, 181, 196.)  It adds the specific allegation that "Foxconn supplies Sotera with 'cables, printed circuit board assemblies (PCBAs), housing parts, sensors, and batteries'" for the ViSi Mobile Monitoring System, is one of "Sotera's main suppliers of sensors and batteries for its medical equipment," and publicizes its involvement in the manufacturing process.  (*Id.*; *see also* FAC ¶ 55.)  Hon Hai argues that Masimo still fails to state that Hon Hai had pre-suit knowledge of the patents to support the contributory infringement claim.  (Mem. of P. & A. at 17.)[11,]

Masimo clearly alleges in the FAC that Hon Hai "knew of the patents no later than the filing of the Complaint."  (FAC ¶¶ 74, 89, 104, 119, 134, 149, 164, 179, 194.)  Thus,

---

[10] The Court adopts its previous conclusion that the ViSi Mobile Monitoring System is not suitable for any other substantial non-infringing use, which is not challenged here by Hon Hai.  (*See* Order at 21–22.)

[11] Hon Hai opposes again on the basis that Masimo's reference to "Foxconn" does not sufficiently state claims against Hon Hai.  The Court rejects this argument for the same reason stated above.  (*See supra*, n.11.)  Masimo makes a specific claim against "Foxconn," which unambiguously intends to refer to the parent company, Hon Hai, and its involvement in making and selling particular parts of the product in the United States.

- 15 -

the contributory infringement claim against Hon Hai survives on these allegations, although they are limited in scope to post-filing conduct. *See Garrett v. TP-Link Research Am. Corp.*, No. 20-CV-03491-SI, 2020 WL 5517202, at *6 (N.D. Cal. Sept. 14, 2020) ("Because [plaintiff] has pled post-filing knowledge, this element is met, but the claim for contributory infringement will be limited to post-filing conduct."); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, 226 F. Supp. 3d 1116, 1121–22 (D. Nev. 2017) (granting a motion to dismiss as to a defendant's pre-filing conduct but denying with respect to post-filing conduct where the plaintiff adequately pled knowledge based on the filing of the case).

However, the FAC also includes allegations implying that Hon Hai had pre-suit knowledge of the patents. For example, Masimo alleges that "Foxconn" had knowledge "by hiring former Masimo employees and following previous trade secret misappropriation litigation asserted against Sotera by Masimo," during which "Foxconn" purportedly exercised control over Sotera. (FAC ¶¶ 74, 89, 104, 119, 134, 149, 164, 179, 194.) Hon Hai claims that none of the alleged actions—"such as investment, ability to seat board members, or participation in settlement negotiations over the prior trade secret lawsuit"— permit an inference that Hon Hai knew of Masimo's patents before this action was filed. (Mem. of P. & A. at 17.)

Generally, the fact of a parent/subsidiary relationship is not enough, on its own, to establish that either entity had the requisite knowledge for contributory infringement. *See Varian Medical Systems, Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772 at *5 (D. Del. 2016) (finding that the "[p]laintiff needs to set out more than just the bare fact of the parent/subsidiary relationship in order to make out a plausible claim that" subsidiary's knowledge can be imputed to the parent); *In SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, *5 (D. Del. 2012) (finding a subsidiary's citation to a published application of a patent-at-issue in another case did not provide a plausible basis to infer the parent's pre-suit knowledge of the patent).

Here, however, the FAC goes beyond merely alleging that this relationship imputes knowledge to Hon Hai. Masimo has alleged that both Sotera and Hon Hai "monitored" the

patents "by hiring former Masimo employees and following previous trade secret misappropriation litigation asserted against Sotera by Masimo," during which Hon Hai purportedly exercised control over Sotera.  (FAC ¶¶ 74, 89, 104, 119, 134, 149, 164, 179, 194.)   The FAC also alleges that an employee in common between the two entities represented that Hon Hai had authority to resolve the previous trade secret dispute on Sotera's behalf—a dispute involving former Masimo employees' theft of the company's confidential information and subsequent hiring by Sotera.  (*Id.* ¶¶ 16, 35.)  The Court finds that at this stage, this is sufficient to allege some pre-suit knowledge by Hon Hai regarding the patents at issue, the precise degree of which would be further determined through discovery.  *See SoftView LLC v. Apple Inc.*, No. CIV. 10-389-LPS, 2012 WL 3061027, at *5 (D. Del. July 26, 2012) (finding allegations that a defendant parent company became aware of a patent through litigation of a subsidiary, connection with plaintiff's inventor and general manager, and its relationship with a co-defendant).

Accordingly, the Court **DENIES** Hon Hai's Motion as to Masimo's contributory infringement claim.

### D.    Vicarious Liability for Direct Infringement

One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it[.]"  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).[12]  When a patentee claims direct infringement through vicarious liability, it "must show that one party directed or controlled the performance of all of the infringing steps to prove direct infringement liability."  *Grecia v. VUDU, Inc.*, No. C-14-

---

[12] As explained by the Ninth Circuit:

> Although "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn," in general, contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities.

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n.17 (1984)).

0775-EMC, 2015 WL 538486, at *4 (N.D. Cal. Feb. 9, 2015).  In the parent-subsidiary context, a parent corporation may be liable as a direct infringer under 35 U.S.C. § 271(a) for infringement by subsidiary corporations only if "the evidence reveals circumstances justifying disregard of the status of [the subsidiaries and the parent] as distinct, separate corporations." *A. Stucki Co. v. Worthington Inds., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988).

In the FAC, Masimo alleges Hon Hai is liable for Sotera's infringing conduct under both alter ego and agency theories of vicarious liability.  The Court finds, however, that Masimo has failed to state a claim against Hon Hai under either theory.

### 1.   Alter Ego Theory of Liability

It is a fundamental principle of corporate law that a parent and its subsidiary are separate legal entities.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  This principle of corporate separateness generally "insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  However, when the corporate form is used for a wrongful or inequitable purpose, a court may disregard the corporate form and impute the acts of a subsidiary to the parent, under the theory that the subsidiary is an "alter ego" of the parent.  *Sonora Diamond Corp. v. Sup. Court*, 83 Cal. App. 4th 523, 538 (2000).[13]

The alter ego doctrine prevents a parent corporation from escaping liability by abusing corporate privilege through a subsidiary that is, in effect, a sham corporation, to commit wrongful acts.  *Id.*; *see also Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (1988) ("The purpose behind the alter ego doctrine is to prevent defendants who are the alter egos of a sham corporation from escaping personal liability for its debts.") (citation omitted).  A plaintiff seeking to invoke the alter ego doctrine must allege: (1) that there is such a unity of interest and ownership between a subsidiary and its

---

[13] In patent cases, federal courts look to the alter ego law of the regional circuit.  *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).  The Ninth Circuit applies the law of the forum state—in this case, California—to determine whether an alter ego relationship exists between a parent and a subsidiary.  *Id.* (citing *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993)).

19cv1100

parent corporation that the separate personalities of the two do not exist; and (2) that failure to disregard the corporate form would cause inequitable results by "sanction[ing] a fraud or promot[ing] injustice." *See Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis omitted) (citing *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977)); *Sonora*, 83 Cal. App. 4th at 538.

As an exception to basic principles of corporate law, "[a]lter ego is an extreme remedy, sparingly used." *Sonora*, 83 Cal. App. 4th at 539; *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . ."). Because there is a strong presumption against disregarding corporate identities, a plaintiff must allege specific facts supporting both of the necessary elements for alter ego liability; conclusory allegations will not suffice. *See Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 984 (N.D. Cal. 2015); *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040–41 (N.D. Cal. 2014).

Hon Hai argues that neither prong of the alter ego test has been met. For the reasons stated below, the Court agrees.

### a.     Unity of Interest

The unity of interest prong "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (quotations omitted). California courts consider several factors to determine whether there is a unity of interest and ownership between a parent and its subsidiary. These include, but are not limited to: (1) the commingling of funds and other assets, (2) identical equitable ownership of the two entities, (3) use of the same offices and employees, (4) use of the subsidiary as a mere shell for the affairs of the parent, (5) failure to maintain adequate corporate records, (6) failure to adequately capitalize the subsidiary, and (7) the holding out by the parent that it is liable for the debts of the subsidiary. *See Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (citing *Roman*

- 19 -

1  *Catholic Archbishop of S.F. v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971)); *see also*

2  *Gerritsen*, 116 F. Supp. 3d at 1137 (listing additional factors).  This list is not exhaustive,

3  and no single factor controls.  A court must examine all the circumstances to determine

4  whether the complaint states a plausible claim for liability under an alter ego theory.

5  *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002).

6      Hon Hai again argues that Masimo "conflates Hon Hai with other entities" using the

7  Foxconn name, which it claims makes the allegations insufficient to state an alter ego claim

8  against Hon Hai.  (Mem. of P. & A. at 10.)  In its FAC, Masimo's alter ego allegations

9  name FHTBG (FAC ¶¶ 25, 28, 30) and refer to other Foxconn companies.  (*Id.* ¶¶ 22, 24–

10 26, 28, 30 (noting overlapping employees between Sotera and "Hon Hai Technology

11 Business Group, "Foxconn Technology Group – Hon Hai Precision," FHTBG, "Sharp Life

12 Sciences," and "DCI Health Technology").

13      As with Masimo's direct liability claim, the fact that FHTBG is a division of Hon

14 Hai—even if reflected in the annual report—cannot establish that the two entities are alter

15 egos of each other.  *See Unocal*, 248 F.3d at 928 (9th Cir. 2001) (noting "references in the

16 parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent

17 company do not establish the existence of an alter ego relationship"); *see also Sandoval*, 34

18 F. Supp. 3d at 1040 (finding allegations that collectively referred to separate corporate

19 entities "too conclusory" to state a claim for alter ego liability); *Akzona Inc. v. E.I. Du Pont*

20 *De Nemours & Co.*, 607 F. Supp. 227, 238 (D. Del. 1984) (determining language of annual

21 report and employee testimony describing subsidiaries as divisions of a parent were not

22 sufficient, even in conjunction with other evidence, to establish alter ego relationship).  In

23 turn, actions attributed to employees of FHTBG cannot be understood by the Court to be

24 actions taken on behalf of Hon Hai.  The same applies to the other entities named in the

25 FAC that have no specified relationship to Hon Hai.[14]  The Court simply does not have

26

27 [14] To the extent Masimo argues that Hon Hai's representations on its website are evidence of an alter ego
   relationship, the Court finds that this is also insufficient.  *See Moody v. Charming Shoppes of Del., Inc.*,

28 No. C 07-06073 MHP, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("Generic language on

enough information from which it can plausibly infer that these entities' actions equate with the actions of the parent company. Thus, to the extent Masimo relies on allegations about these other entities to support its alter ego theory against Hon Hai, the Court does not consider them in its evaluation of the claim.

The remaining allegations regarding unity of interest include the following:

- Hon Hai made substantial investments in Sotera during its Chapter 11 reorganization and is its majority shareholder, owning a two-thirds equity stake in Sotera and has two board seats, and recently increased its investment to $100 million (FAC ¶¶ 20, 22);

- Hon Hai ordered an executive "to go to the US and solve the problem of Sotera Wireless" after it emerged from bankruptcy (*id.* ¶¶ 21, 22, 32);

- Hon Hai entered into discussions with investment bankers about selling Sotera and "will be negotiating the terms of any sale" (*id.* ¶ 23);

- Hon Hai and Sotera intermingle several of the same high-level employees (*id.* ¶¶ 24–30);

- Hon Hai "has exercised control over discussions between Masimo and Sotera" and had authority to resolve the trade secret dispute (*id.* ¶¶ 31, 35); and

- The CEO of Sotera represented that Hon Hai had plans to use Sotera technology in a cancer hospital that the company's founder was developing in Taiwan, had instituted the changes to Sotera's management team, and had the authority to resolve the trade secret dispute between Sotera and Masimo (*id.* ¶¶ 31–36, 47).

Hon Hai argues that these allegations taken together, even if true, do not sufficiently allege the factors necessary to establish unity of interest. (Mem. of P. & A. at 9–10.)

Construing the facts most favorably to Masimo, the Court finds that it has not pled unity of interest. First, the Court notes that Masimo does not allege at all that Hon Hai and Sotera commingled funds or other assets, failed to maintain adequate corporate records, or

---

[company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent.").

that Hon Hai failed to adequately capitalize Sotera.  In fact, as Hon Hai points out, Masimo alleges that Hon Hai invested $100 million in Sotera.  (FAC ¶¶ 22, 51.)  Further, the FAC does not claim that Hon Hai has ever held itself out as liable for Sotera's debts, or that Sotera was used as a mere shell for Hon Hai's affairs.  The failure to discuss these factors weighs against a finding of alter ego liability.  *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 955 (N.D. Cal. 2015).

Masimo's allegations that Hon Hai has a significant ownership stake in Sotera, played a role in negotiating the sale of Sotera, and placed its employees at high-level positions in Sotera, reflect high-level involvement by a parent company in a subsidiaries' operations or finances that is generally insufficient to establish unity of interest.  *See Unocal*, 248 F.3d at 927–28 (finding high-level involvement, without any indication that corporate formalities were not observed, established only that the defendant was "an active parent corporation involved directly in decision-making about its subsidiaries' holdings").

Further, it is well-established "that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods*, 524 U.S. at 69.  "Courts generally presume that such dual status individuals wear their 'parent hats' when serving the parent's interests, and their 'subsidiary hats' when serving the subsidiary's interests."  *Bastidas v. Good Samaritan Hosp.*, No. C 13-04388 SI, 2014 WL 3362214, at *4 (N.D. Cal. July 7, 2014).  "To defeat this presumption, a plaintiff would need to allege facts demonstrating that the dual status individuals were acting in the parent's interest, and not the subsidiary's, when they engaged in the challenged conduct." *Id.*

Masimo has alleged no such facts here.  The FAC does not specifically allege that any of the several individuals named in the FAC that were simultaneously serving in positions at both Hon Hai and Sotera were acting solely in the interest of Hon Hai.  (*See* FAC ¶¶ 24–30.)  The mere fact of their dual roles therefore does not lend plausibility to the allegation that an alter-ego relationship exists between the two entities. *See Ranza*, 793 F.3d at 1074–75 (holding that because "total ownership and shared management personnel

are alone insufficient to establish the requisite level of control," placement of "[a parent's] directors on the subsidiary's board" does not singularly create an alter-ego relationship) (internal quotations and citations omitted); *see also Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 988 (C.D. Cal. 2013) (holding that "general policy-setting" or direct involvement of "macro-management" of a subsidiary does not expose the parent company to alter ego allegations").

Lastly, Masimo supports its alter ego theory with Sotera CEO Francis Chen's statements about Hon Hai's increased control over Sotera in the wake of its bankruptcy and its representation of ownership over the proprietary information in question. However, as pointed out by Hon Hai, Masimo does not indicate which of the alter ego factors these facts are intended to support. *See NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK-HRL, 2015 WL 400251, at *6 (N.D. Cal. Jan. 29, 2015) ("As a preliminary matter, [the plaintiff] fails to explain how several of its [factual] allegations . . . are relevant to the eight factors in the unity of interest and ownership inquiry . . . . [The plaintiff] does not otherwise explain how these alleged facts are applicable."); *see also Reynolds v. Binance Holdings Ltd.*, No. 20-CV-02117-JSC, 2020 WL 5074391, at *4 (N.D. Cal. Aug. 26, 2020); *Nakanwagi v. Tenet Healthcare Corp.*, No. CV-15-01596-PHX-DGC, 2017 WL 394492, at *3 (D. Ariz. Jan. 30, 2017) (finding no showing of unity of interest where the plaintiff alleged only that the subsidiary's "operational activities [we]re controlled by" a parent corporation but provided no facts to show pervasive control over the day-to-day operations of the subsidiary).

The Court therefore finds Masimo has inadequately pled unity of interest.

### b.     Inequitable Results

Even had Masimo satisfactorily pled unity of interest, the Court cannot find that Masimo has adequately alleged that an inequitable result would follow if the corporate separateness of the defendant entities was not disregarded.

As aforementioned, the inequitable results prong of the alter ego doctrine requires a showing that failing to pierce the corporate veil would sanction a fraud or promote injustice.

1   *Gerritsen*, 116 F. Supp. 3d at 1143.  The parties presume that bad faith is required for this

2   factor.  Relying on various California case law,[15] the Ninth Circuit has held that a specific

3   showing of bad faith is not required where there has been an abuse of the corporate form,

4   "such as under-capitalization or misrepresentation of the corporate structure to creditors,"

5   but is required where no such abuse is alleged.  *Sentry Life Ins. Co. v. Roberts*, 925 F.2d

6   1470 (9th Cir. 1991); *see also Orloff v. Allman*, 819 F.2d 904, 908 (9th Cir. 1987) (citing

7   *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) (unpublished)),

8   *abrogated on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.

9   1990); *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir.

10   1977) (holding that California's alter ego doctrine applies "where some conduct amounting

11   to bad faith makes it inequitable" for the defendant to hide behind the corporate veil)

12   (quotation omitted); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D.

13   Cal. 2003) (dismissing alter ego claims because plaintiff failed to allege that parent

14   company engaged in any bad faith conduct)).[16]

---

15   [15] *See Westinghouse Elec. Corp. v. Superior Court of Alameda Count*y, 17 Cal. 3d 259, 274 (1976) ("Bad

16   faith in one form or another must be shown before the court may disregard the fiction of separate corporate

17   existence."); *Mid–Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992) ("The purpose of the

18   doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct

     amounting to bad faith makes it inequitable, under the applicable rule above cited, for the equitable owner

19   of a corporation to hide behind its corporate veil."); *Arnold v. Browne*, 27 Cal. App. 3d 386, 397 (1972)

     (requiring fraud or bad faith to pierce the corporate veil pursuant to the alter ego doctrine), *disapproved of

20   on other grounds by Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124 (1979); *Associated Vendors, Inc. v.

     Oakland Meat Co.*, 210 Cal. App. 2d 825, 838 (1962) ("[B]ad faith in one form or another is an underlying

21   consideration and will be found in some form or another in those cases wherein the trial court was justified

     in disregarding the corporate entity."); *see also Automotriz Del Golfo De Cal. S. A. De C. V. v. Resnick*,

22   47 Cal. 2d 792, 797 (1957) ("If a corporation is organized and carries on business without substantial

     capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts,

23   it is inequitable that shareholders should set up such a flimsy organization to escape personal liability.")

     (quotations omitted); *Am. Home Ins. Co. v. Travelers Indem. Co.*, 122 Cal. App. 3d 951, 966 (1981) ("The

24   fraud or inequity sought to be eliminated must be that of the party against whom the alter ego doctrine is

     invoked, and such party must have been an actor in the course of conduct constituting the 'abuse of

25   corporate privilege.") (quotations omitted).

     [16]   The Court notes, however, that whether bad faith is required to show inequitable results is not fully

26   resolved in this circuit.  *See Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797,

27   at *10 n.13 (N.D. Cal. Mar. 7, 2018).  Other courts have found that "the bulk of [California] case law

     seems to omit or even expressly disavow a bad-faith or fraudulent-intent requirement."  *Pac. Bell Tel. Co.

28   v. 88 Connection Corp.*, No. 15-CV-04554-LB, 2016 WL 3257656, at *4 (N.D. Cal. June 14, 2016); *see

---

1       The FAC itself states that "[o]n information and belief, [Hon Hai] desires to

2  potentially escape liability for infringement by having Sotera again seek bankruptcy

3  protection." (*Id.* ¶ 37.) Masimo provides some context for this claim, stating that in 2016,

4  Sotera petitioned for bankruptcy five weeks before trial in a trade secrets case previously

5  brought by Masimo for the express purpose of preventing the claims from going to trial.

6  (*Id.* ¶ 18.) It further alleges that after Sotera's bankruptcy, Hon Hai made significant

7  investments in the company, became its largest investor, and effectively "had taken control

8  of the company as it emerged from bankruptcy." (*Id.* ¶¶ 20, 32.) In this way, Masimo

9  argues, Hon Hai is in a position to execute a "bad faith scheme" by threatening Sotera's

10  bankruptcy as a means of immunizing both Sotera and itself from liability. (Opp'n at 18–

11  19.) Hon Hai argues that this amounts to only "speculative assertions that 'Foxconn' may

12  have Sotera seek bankruptcy protection to avoid potential patent infringement liability,"

13  which are insufficient because Masimo has not also alleged bad faith conduct. (Mem. of

14  P. & A. at 8.) Masimo's claimed inequity, according to Hon Hai, amounts to an argument

15  that it will not be able to recover if Sotera seeks bankruptcy. (*Id.*)

16       Even if Masimo's "bad faith scheme" is more than just an argument that it will be

17  unable to recover against an insolvent defendant, its allegations still fall short of alleging

18  an inequitable result for the purposes of alter ego liability. Masimo only states that Hon

19  Hai "potentially" seeks to pursue Sotera's bankruptcy to escape liability; it offers no support

20  for the allegation that Hon Hai is, in fact, pursuing this option. *See Cook v. Brewer*, 637

21  F.3d 1002, 1006 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555) ("While the pleading

22

23  *Triyar Hospitality Mgmt., LLC v. WSI (II) - HWP, LLC*, No. B301158, 2020 WL 6816648, at *4 (Cal. Ct. App. Oct. 22, 2020) (finding that a moving party is required to prove only "that the alter ego's acts caused

24  an inequitable result," not conduct amounting to bad faith), *reh'g denied* (Nov. 17, 2020); *Relentless Air Racing, LLC v. Airborne Turbine Ltd.*, 222 Cal. App. 4th 811, 813, 816 (2013) ("An inequitable result

25  does not require a wrongful intent" and that the trial court erred by requiring the creditor to prove otherwise.").

26       However, the controlling precedent in this circuit and from the California Supreme Court, cited above, establish that bad faith is a necessary part of the alter ego test where a plaintiff does not show an

27  abuse of the corporate form. Further, Masimo does not dispute that bad faith is required in this case. (*See* Opp'n at 18.) As such, the Court follows the line of precedent requiring a showing of bad faith to

28  sufficiently plead an alter ego theory of liability.

standard for Rule 8(a) is liberal, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"").  The allegation is based solely "[o]n information and belief"; there are no other specific facts from which the Court can infer that Hon Hai seeks to have Sotera file for bankruptcy at all, let alone for bad faith reasons that would make treating the two entities as separate inequitable.  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1123 (S.D. Cal. 2011) (inferring bad faith motive where parent company selling nutritional supplements changed its name and description of business activities to that of a "holding company" in response to litigation from the FDA); *Craigslist, Inc. v. Mesiab*, No. C 08-05064 CW MEJ, 2010 WL 5300883, at *7 (N.D. Cal. Nov. 15, 2010) (finding statements by the individual defendant that entity defendant was created to remain "untouchable by present litigation" sufficient to establish bad faith on a motion for default judgment), *report and recommendation adopted*, No. C 08-5064 CW, 2010 WL 5300881 (N.D. Cal. Dec. 20, 2010).  In any event, Hon Hai considering or even pursuing Sotera's bankruptcy does not, without more, satisfy the bad faith standard if the bankruptcy was sought in the best financial interest of the company.  *See Sonora*, 83 Cal. App. 4th at 539 (citing *Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989)) (holding that a parent company is not "exposed to liability for the obligations of [the subsidiary] when [the parent] contributes funds to [the subsidiary] for the purpose of assisting [the subsidiary] in meeting its financial obligations and not for the purpose of perpetuating a fraud").

Thus, the Court finds that Masimo has not sufficiently alleged inequitable results for purposes of stating an alter ego claim against Hon Hai.

### 2. Agency Theory of Liability

A parent corporation can also be held vicariously liable for the acts of a subsidiary corporation if an agency relationship exists between the two entities.  Unlike piercing the corporate veil to recover from a parent company, finding a parent liable under agency theory is premised on the idea "that the parent fraudulently induced the subsidiary to incur

the obligation" underlying legal liability.  *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 412 (S.D.N.Y. 1996), *aff'd*, 164 F.3d 619, 1998 WL 695034 (2d Cir. 1998).

Agency can be established in two ways: (1) the parent company must be shown to have "moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy"; or (2) the subsidiary is shown to "perform[] services that are sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *See whiteCryption Corp. v. Arxan Techs., Inc.*, No. 15-CV-00754-WHO, 2015 WL 3275944, at *11 (N.D. Cal. June 15, 2016); *see also Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JFRS, 2009 WL 975817, at *7 (N.D. Cal. Apr. 10, 2009).

In the first test, which appears to be at issue here, an agency relationship exists "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities."  *Sonora*, 83 Cal. App. 4th at 541.  The California Court of Appeal has described the level of "control" necessary for an agency relationship as extending beyond control incident to ownership, such as "interlocking directors and officers, consolidated reporting, and shared professional services," as well as "a close financial connection."  *Id.* at 540–42 (citations omitted).  Practically speaking, a parent company's control must be so extensive that the subsidiary becomes "only a means through which the parent acts, or nothing more than an incorporated department of the parent[.]"  *Id.* at 541; *Consortium of Servs. Innovation v. Microsoft Corp.*, No. C19-0750-JCC, 2020 WL 885742, at *2 (W.D. Wash. Feb. 24, 2020) (citing *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, Case No. C08-1372-RSM, Dkt. No. 331 at 12 (W.D. Wash. 2010), *aff'd*, 447 F. App'x 814 (9th Cir. 2011)) (agency requires that a parent exercise "complete domination," the subsidiary is a mere shell, or a parent uses its ownership interest to "command rather than merely cajole" the subsidiary).

In support of its agency theory, Masimo alleges that Hon Hai:

- has "effectively taken over the day-to-day operation of Sotera" because it controls Sotera's executives, board members, and management (FAC ¶¶ 38, 42, 44);

- intermingles employees by appointing "several high-level Sotera employees" to "high-level positions" at Hon Hai (*id.* ¶¶ 38, 50) and sending one such employee to "take control" of Sotera after its bankruptcy (*id.* ¶¶ 40, 46, 47);

- retained authority to resolve the trade dispute between Sotera and Masimo (*id.*);

- invested heavily in Sotera (*id.* ¶¶ 40, 41);

- has negotiating power over the sale of Sotera (*id.* ¶¶ 43, 51).

- hired the same counsel for the bankruptcy proceeding as Sotera (*id.* ¶ 45);

- has jointly developed the ViSi Mobile Monitoring System with Sotera and manufactures parts of it (*id.* ¶¶ 48–49), and

- is a "real party-in-interest" to Sotera's petition for *inter partes* review seeking to invalidate Masimo's patents before the U.S. Patent and Trademark Office (*id.* ¶ 52).

Hon Hai argues that these allegations reflect nothing more than "high-level involvement" that do not concern the day-to-day activity of Masimo's operation and are merely incidental to its ownership of Sotera.  (Mem. of P. & A. at 13–14.)

The Court finds the FAC's allegations fail to show that Sotera is an agent of Hon Hai.  First, as aforementioned, a bare allegation that two entities share officers and/or directors does not suffice to show any dissolution of the corporate structure warranting piercing of the corporate veil.  *See Bestfoods*, 524 U.S. at 69; *Bastidas*, 2014 WL 3362214, at *4.  Further, a parent's investment in a subsidiary and authority over its possible sale are well within the typical scope of a parent-subsidiary relationship.  *See Bestfoods*, 524 U.S. at 72 (holding that "monitoring of the subsidiary's performance" and "supervision of the subsidiary's finance and capital budget decisions . . . are consistent with the parent's investor status").

19cv1100

Second, Hon Hai's oversight or management of Sotera's legal actions, such as the trade dispute or Sotera's bankruptcy, also does not give rise to the plausible inference that Sotera is merely an "incorporated department" of Hon Hai. *Sonora*, 83 Cal. App. 4th at 541. Supervision over legal decisions is incident to Hon Hai's ownership over Sotera and does not reflect any purposeful disregard of Sotera's independent corporate existence.[17] *Sonora*, 83 Cal. App. 4th at 542. Masimo does not allege any additional specifics about Hon Hai's involvement in the bankruptcy or trade dispute that indicate it went beyond this standard oversight to the type of pervasive control that characterizes an agency relationship. *See Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 901 (N.D. Cal. 2009) ("[S]ome degree of control is usually[,] even if not necessarily[,] implicit in the parent subsidiary relationship. Thus, the degree of control exercised by the parent in order for the subsidiary to qualify as an agent must therefore exceed that which is to be expected in the normal scope of any such relationship.").

Neither does the alleged joint development of the ViSi Mobile Monitoring system plausibly allege that Sotera was an agent of Hon Hai. A parent company's involvement in the minutia of a product line does not give rise to agency liability. *See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (concluding that no agency liability existed where a parent company was responsible for sale of subsidiary's products abroad, "had general executive responsibility for the operation of" the subsidiary, "reviewed and approved its major policy decisions," guaranteed its obligations, and worked closely with the subsidiary's executives regarding pricing and marketing); *whiteCryption Corp.*, 2016 WL 3275944, at *11 (finding a parent company's role in branding decisions, providing technical support, naming and pricing products, developing marketing strategies, and reselling and distributing subsidiary's products did not establish agency relationship).

---

[17] Hon Hai's involvement in Sotera's legal affairs is also insufficient to show the degree of control necessary for unity of interest. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 4963253, at *12–13 (N.D. Cal. Oct. 8, 2019) (finding no alter ego liability where parent and wholly owned subsidiaries had identical officers and directors, shared employees, and parent provided financial and legal support to subsidiaries); *NetApp*, 2015 WL 400251, at *5 (same); *Grayson Serv., Inc. v. Crimson Res. Mgmt. Corp.*, 2016 WL 8730734, at *8 (E.D. Cal. Feb. 5, 2016) (same).

Further, allegations about the "joint development" of a product implies Sotera independently contributed to the venture, belying the notion that Sotera was a mere instrumentality through which Hon Hai conducted its business. *See Sonora*, 83 Cal. App. 4th at 541.[18]

Accordingly, having found insufficient allegations to plausibly demonstrate that an alter ego or agency relationship exists between Hon Hai and Sotera, the Court **GRANTS** Hon Hai's Motion to dismiss these claims. *See Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("In the absence of evidence showing that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary, we have refused to find direct infringement.").

## IV.   CONCLUSION

Accordingly, the Court **ORDERS** the following:

(1)   Hon Hai's Motion to Dismiss the FAC (ECF No. 62) is **GRANTED IN PART**.  Masimo's direct infringement claim and vicarious liability claims against Hon Hai are **DISMISSED WITH LEAVE TO AMEND**.  Masimo has until **December 31, 2020** to file an amended complaint.

(2)   The Motion is **DENIED** as to Masimo's contributory infringement claim.

(3)   The associated Motion to Seal (ECF No. 66) is **TERMINATED AS MOOT**.

   **IT IS SO ORDERED.**

**DATED: December 9, 2020**

*Cynthia Bashant*

**Hon. Cynthia Bashant**
**United States District Judge**

---

[18] To the extent Masimo intends allegations about Defendants' joint development of the product to support alter ego liability, this argument also fails.  *See Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2016 WL 9024808, at *4 (C.D. Cal. May 23, 2016) (noting "the mere fact that a parent coordinates its efforts with its subsidiary does not establish that the subsidiary is the alter ego of the parent"); *see also Unocal*, 248 F.3d at 927–28 (finding no unity of interest even where a parent company was involved in forming the subsidiary's business plan).